UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| HEATHER S. TIMOTHY, an individual,<br><br>    Plaintiff,<br><br>        v.<br><br>ONEIDA COUNTY, a political subdivision of the State of Idaho; DUSTIN W. SMITH, individually and in his capacity as Prosecuting Attorney for Oneida County, Idaho; SHELLEE DANIELS, DALE F. TUBBS and MAX C. FIRTH, individually and in their capacities as Oneida County Commissioners,<br><br>    Defendants. | Case No. 4:14-cv-00362-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

Before the Court is defendants' Motion for Partial Dismissal (Dkt. 13).  For the reasons explained below, the Court will grant the motion in part, and deny it in part.

## BACKGROUND

In November 2005, plaintiff Heather Timothy began working as a legal secretary for Oneida County.  Her supervisor was Oneida County Prosecutor Dustin Smith.

In January 2012, Timothy discovered that Smith was having checks issued to himself "from the part-time secretary portion of the Prosecutor's Office budget." *Am. Comp.*, Dkt. 9, ¶ 23.  Timothy knew the prosecutor's office did not employ a part-time secretary, so she reported her concerns to Oneida County Sheriff Jeff Semrad.  Sheriff Semrad began investigating Smith for misappropriating or misusing public funds.

In November 2013, Sheriff Semrad met with the Oneida County Commissioners – defendants Shellee Daniels, Dale Tubbs, and Max Firth.  Semrad told the Commissioners about the checks Smith had been receiving for part-time secretarial help.  The Commissioners told Semrad that in December 2011, Smith had asked if the County could pay him directly to compensate his wife for filling in for his fulltime secretary (plaintiff Timothy).  The Commissioners approved the arrangement, but said they had understood this arrangement was for infrequent, part-time help – not regular monthly help, with regular monthly checks issued to Smith.  *Id.* ¶ 30.  (In November 2012, Smith received a monthly check for $166.  In 2013, he received monthly checks for $100.)

After his November 2013 meeting with the Commissioners, Sheriff Semrad asked the Idaho State Police (ISP) to investigate Smith for "billing the county for a part-time Secretary that does not exist.'"  *Id.* ¶ 32 (quoting Ex. B, Sheriff Semrad letters).  The police commenced an investigation, which included interviewing the Commissioners and plaintiff Heather Timothy.

Ultimately, the case ended in April 2014.  Smith repaid roughly $3,000 to Oneida County and was not charged with any criminal conduct.  Smith issued a press release,

saying he was pleased to learn he had been exonerated.  *Am. Comp.*, Dkt. 9, ¶ 52.

Earlier, however, while the ISP investigation was underway, Smith terminated Timothy's employment.  He began the process on February 4, 2014 (a few days after the Idaho State Police interviewed Timothy), by sending Timothy a Notice of Pending Personnel Action.  *Ex. F to Am. Comp.*, Dkt. 9-6.  The notice enumerated various forms of alleged misconduct.  (During her previous eight years of employment, Timothy had not received any negative evaluations from Smith.)  The notice also informed Timothy that she could meet with Smith on February 10, 2014 to respond to the notice "and/or" respond to the notice in writing.   *Id.*

Timothy did not respond directly to Smith upon receiving this notice.  Instead, on February 7, 2014, her lawyers sent a letter to the Oneida County Board of Commissioners, asking them to assist Timothy by "immediately withdrawing the [February 4, 2014] Notice . . . ."  *See Ex. G to Am. Comp.*, Dkt. 9-7, at 2.  The Commissioners did not respond to this letter, but shortly after this letter was sent to the Commissioners, Smith sent a letter to Timothy, suspending her without pay and postponing the February 10, 2014 meeting "until further notice."  *Feb. 10, 2014 Notice,* Dkt. 9-8.

A month later, on March 10, 2014, Smith sent another Notice of Pending Personnel Action to Timothy.  *See* Dkt. 9-9.  He terminated her one week later.  *See* Dkt. 9-12.

In August 2014, Timothy filed this lawsuit.  The amended complaint names

Oneida County, Smith, and Commissioners Daniels, Tubbs, and Firth as defendants. It

pleads the following claims:

| | |
|---|---|
| Count I | Injunctive and Declaratory Relief for First and Fourteenth Amendment Violations |
| Count II | Monetary Damages for Retaliatory Discharge in Violation of 42 U.S.C. § 1983 |
| Count III | Denial of Due Process in Violation of 42 U.S.C. § 1983 |
| Count IV | Termination of Public Employment in Violation of Idaho Law |
| Count V | Negligent Infliction of Emotional Distress |
| Count VI[1] | Termination of Private Employment in Violation of Public Policy |
| Count VII | Intentional Infliction of Emotional Distress (IIED) |

*See Am. Comp.*, Dkt. 9

Defendants move for a "partial dismissal" of the amended complaint. Defendants

argue that one of the counts – Count VII for IIED, should be dismissed outright.

Otherwise, they are mainly arguing that individual defendants should be dismissed from

various claims.

## THE GOVERNING LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement

of the claim showing that the pleader is entitled to relief," in order to "give the defendant

---

[1] Counts VI and VII are not numbered correctly in the amended complaint.

fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555.  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id*. at 556.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  *Id*.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id*. at 557.

The Supreme Court identified two "working principles" that underlie *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  First, the court need not accept as true, legal conclusions that are couched as factual allegations.  *Id*.  Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Id.* at 678-79.  Second, to survive a motion to dismiss, a complaint must state a plausible claim for relief.  *Id.* at 679.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*

A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009) (issued two months after *Iqbal*). The Ninth Circuit has held that "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.,* 911 F.2d 242, 247 (9th Cir. 1990). The issue is not whether plaintiff will prevail but whether he "is entitled to offer evidence to support the claims." *Diaz v. Int'l Longshore & Warehouse Union, Local 13*, 474 F.3d 1202, 1205 (9th Cir. 2007) (citations omitted).

## DISCUSSION

Before addressing the more difficult substantive issues presented by this motion, the Court will attempt to clear up some confusion surrounding Counts I, II, and II. Defendants complain that these claims are confusingly drawn, and Timothy herself concedes that certain allegations are confusing or duplicative, and, further, that some of her claims should be construed more narrowly than drafted.

Backing up for a moment, Timothy's first three claims revolve around allegations that the defendants violated her rights under the First and Fourteenth Amendments. Specifically, in Count II, Timothy alleges that she was wrongly terminated for having engaged in protected speech, in violation of her First Amendment rights. In Count III, Timothy alleges that defendants violated her procedural due process rights under the

Fourteenth Amendment by disciplining, and then firing, her without conducting an administrative hearing before an impartial and disinterested decisionmaker. Also within Count III, Timothy attempts to allege a Fourteenth Amendment liberty-interest claim based on her allegation that defendants failed to provide her with a post-termination name-clearing hearing.

Defendants "do not dispute that, overall, Timothy has pled a Fourteenth Amendment procedural due process claim and a First Amendment retaliatory discharge claim against the County and Smith individually (but not the commissioners)." *Motion Mem.,* Dkt. 20, at 2. Ultimately, then, the key issue regarding these constitutional claims is whether Timothy has adequately alleged claims against the Commissioners in their individual capacity. The Court will take up that question below. But first, there is a more obvious question: What purpose does Count I serve?

## 1.    Count I – Injunctive and Declaratory Relief

Count I is captioned as a claim for "Injunctive and Declaratory Relief for First and Fourteenth Amendment Violations." *Am. Comp.*, Dkt. 9, at 20. Timothy says this count is necessary because it seeks *prospective* relief for the claims she asserts in Counts II and III. She thus assumes that she can state an independent claim for "injunctive relief." This is not so. Injunctive relief is a remedy – not a stand-alone claim. *See e.g., Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010) ("An injunction is a remedy, not a separate claim or cause of action."); *Henke v. ARCO Midcon, L.L.C.,* 750 F. Supp. 2d 1052, 1059-60 (E.D. Mo. 2010) ("Injunctive relief . . . is a remedy, not

an independent cause of action."); *Motley v. Homecomings Fin., LLC,* 557 F. Supp. 2d 1005, 1014 (D. Minn. 2008) (no independent cause of action for injunction exists). While it is theoretically possible that Timothy may be entitled to injunctive relief on some of her claims, she cannot properly plead "injunction" as an independent claim.  Rather, she may seek this relief in her prayer for relief.

Timothy also includes a request for "declaratory relief" within Count I.  But in seeking such relief, she is relying on defendants' past wrongs – *i.e.*, the alleged retaliatory discharge and the alleged failure to provide her with hearings before a neutral hearing officer.  *See Am. Comp.,* Dkt. 9, ¶¶ 79-80.  As other courts have observed, if plaintiffs are relying on past wrongs in seeking declaratory relief, "a claim under the Declaratory Relief Act is improper and in essence duplicates Plaintiffs' other causes of action." *Marzan v. Bank of Am.*, 779 F. Supp. 2d 1140, 1146-47 (D. Haw. 2011) (*abrogated on other grounds by Compton v. Countrywide Fin. Corp.*, 761 F.3d 1046 (9th Cir. 2014)). Given Timothy's other allegations in the complaint, the "declaratory relief" claim asserted in Count I is not cognizable as an independent claim.  *See id.* (citing *Seattle Audubon Soc. v. Moseley*, 80 F.3d 1401, 1405 (9th Cir. 1996) ("A declaratory judgment offers a means by which rights and obligations may be adjudicated in cases brought by any interested party involving an actual controversy that has not reached a stage at which either party may seek a coercive remedy and in cases where a party who could sue for coercive relief has not yet done so." (citation and quotation signals omitted)).

For all these reasons, the Court will dismiss Count I without leave to amend

because it duplicates plaintiffs' other claims.  Granted, defendants did not ask the Court to dismiss Count I outright.  They just asked the Court to narrow Count I to a procedural due process claim against Smith and Oneida County.  But Timothy is already alleging a procedural due process claim in Count III, which renders Count I superfluous.  So the more logical course is to dismiss Count I altogether.  The Court will, however, allow Timothy an opportunity to amend her complaint to the extent she believes it is necessary to (1) use the allegations currently set forth in Count I to support Count III, and (2) include or modify any request for injunctive relief as part of her prayer for relief.

**2.      Count II – Retaliatory Discharge in Violation of the First Amendment**

Next up is Count II.  All parties agree that this Count alleges a First Amendment retaliatory discharge claim.[2]  Oneida County acknowledges that Timothy has adequately pleaded this claim as to it.  The individual defendants (Smith and the Commissioners), however, contend that this claim should be dismissed as to them.

**A.      Qualified Immunity**

Smith and the Commissioners first argue that they are entitled to qualified immunity.  This argument is relatively limited in scope, as they do not ask the Court to dismiss the entire claim against them.  Rather, they say Timothy's First Amendment

---

[2] Timothy concedes that "any due process claim asserted in Count II should be dismissed as duplicative of the due process claims set forth in Count III." *Response Br.*, Dkt. 18, at 3.  Timothy further states that she has "no objection to construing Count II of the Amended Complaint as asserting a claim for monetary damages arising only from Defendants' retaliatory discharge of Timothy in violation of the First Amendment . . . ." *Id.* at 10.  In other words, Timothy is willing to drop the procedural due process claim from Count II, as it is pled elsewhere.

claim is based on two separate factual components:  (1) Timothy's speech regarding

Smith's misuse of public funds; and (2) Timothy's participation in an interview with the

police.  Then, having so separated the claim, the individual defendants explain their

current strategy:

> At this point, Defendants do not seek qualified immunity as to this part
> of Timothy's First Amendment claim as to the reporting of misuse of
> public funds only, but reserve the right to raise it, if necessary, once the
> record is more fully developed. *However, Defendants still maintain that
> Timothy's claims as to participation in the ISP interview must be
> dismissed.*

*Reply,* Dkt. 20, at 2-3 (emphasis added).

Implicitly, then, the individual defendants appear to be conceding (at least for

purposes of this motion) that it was clearly established that a public employee reporting a

misuse of public funds is engaging in protected speech.  *See Robinson v. York*, 566 F.3d

817, 822 (9th Cir. 2009).  Or, put differently, they concede that a reasonable government

official could not have reasonably believed Timothy could be fired for reporting a

supervisor's misuse of public funds.

Under these circumstances, the Court will deny the motion for a "partial

dismissal" of the retaliatory discharge on qualified-immunity grounds.  The Court is not

persuaded that Timothy's First Amendment claim should be segmented into two separate

components, as suggested by the defendants.  Rather, based on a fair reading of the

complaint, Timothy is generally complaining that she was terminated for reporting her

supervisor's misuse of public funds by her supervisor.  Her participation in the ISP

interview is alleged as part of that larger process.  The Court will therefore deny the

motion to dismiss the individual defendants based on qualified immunity.

*Lane v. Franks,* 134 S. Ct. 2369 (2014), which defendants discuss in their brief, does not change the analysis.  In *Lane*, the Supreme Court held that the First Amendment protects a public employee who provided truthful sworn testimony, compelled by subpoena, outside the course of his ordinary job responsibilities.  *Id.* at 2379-80.  *Lane* also held, however, that because this issue had not been "clearly established" in the Eleventh Circuit, the individual defendants were entitled qualified immunity.  *Id.* at 2383.

*Lane* is not on point because Timothy was not providing testimony under force of a subpoena; she was voluntarily speaking out regarding her supervisor's alleged misuse of public funds.  Further, even before *Lane,* it was already clear in the Ninth Circuit that a public employee reporting a misuse of public funds is engaging in protected speech.  *See Robinson*, 566 F.3d at 822.  A grant of qualified immunity would thus be improper.  *Cf. Boyd v. Benton Cty.*, 374 F.3d 773, 781 (9th Cir. 2004) ("If the right is clearly established by the decisional authority of the Supreme Court *or this Circuit*, our inquiry should come to an end.") (emphasis added); *Rivero v. City and Cnty. of S.F.*, 316 F.3d 857, 865 (9th Cir. 2002) (a circuit split did not render the law unclear in the Ninth Circuit before the Supreme Court resolved the split; the Supreme Court's resolution of the split merely confirmed already clear law in the Ninth Circuit).  The Court will therefore deny the individual defendant's motion to dismiss on the basis of qualified immunity.

### B.    Personal Involvement

The Commissioners next argue that they should be dismissed as defendants on the

First Amendment claim because were not personally involved in Timothy's termination. As Timothy has correctly observed, however, "'personal participation is not the only predicate for section 1983 liability." *Dahlia v. Rodriguez,* 735 F.3d 1060, 1078 n.22 (9th Cir. 2013) (internal quotation marks and citations omitted). Rather, anyone who "'causes' any citizen to be subjected to a constitutional deprivation is also liable.'" *Id.* "The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Id.*

The Commissioners argue that Timothy's amended complaint affirmatively shows they were *not* involved in Timothy's termination. *Motion Mem.,* Dkt. 1-31, at 9-10. For example, they point out that it was Smith who sent each of the disciplinary communications to Timothy. Timothy's responding brief is extremely brief and general. *See Response Br.*, Dkt. 18, at 12-14. She does not, for example, meaningfully discuss any specific factual allegations in the complaint that would support her position that the Commissioners personally involved themselves in the decision to terminate Timothy. *See id.* Instead, after reciting the relevant legal standard, she just says this:

> At a minimum, Timothy has pled facts that "plausibly suggest[]" Daniels, Tubbs and Firth may have set in motion a series of acts by Prosecutor Smith which they either knew or reasonably should have known would cause Prosecutor Smith to terminate Timothy and deny her a post termination hearing in retaliation for her having reported his misuse of public funds to the county sheriff.

*Id.; see also id.* at 13 (stating that "Timothy has pled facts that plausibly suggests that

Daniels, Tubbs and Firth did affirmative acts, participated in the affirmative acts of Prosecutor Smith and/or failed to perform acts that they were legally required to do that caused the deprivation of Timothy's constitutional rights."). These sorts of conclusory statements are not sufficient. *Cf. Kansas Penn Gaming, LLC v. Collins,* 656 F.3d 1210 (10th Cir. 2011) (dismissing County commissioners from as defendants on a § 1983 claim where plaintiff failed to show that the commissioners were involved in the underlying violation). The Court will therefore dismiss the First Amendment claims against the Commissioners, but will allow Timothy the opportunity to amend her complaint to state a claim against the Commissioners individually. Any amended complaint should clearly set forth the facts Timothy intends to rely upon to support her ultimate conclusion that the Commissioners "may have set in motion a series of acts by Prosecutor Smith which they either knew or reasonably should have known would cause Prosecutor Smith to terminate Timothy and deny her a post termination hearing in retaliation for her having reported his misuse of public funds to the county sheriff." *Response Br.*, Dkt. 18, at 13-14.

The parties also disagree as to whether the Commissioners are constitutionally permitted to supervise or otherwise exercise authority over the Oneida County Prosecutor's personnel decisions. The Commissioners argue that Idaho's separation-of-powers doctrine prohibits them from doing so. Idaho's expression of the separation-of-powers doctrine is found in Article 2, § 1 of the Idaho Constitution, which provides:

> The powers of the government of this state are divided into three
> distinct departments, the legislative, executive and judicial; and no

> person or collection of persons charged with the exercise of power
> properly belonging to one of these departments shall exercise any
> powers properly belonging to either of the others, except as this
> constitution expressly directed or permitted.

Under this article, the Commissioners may not exercise powers properly belonging to the judicial branch. *See Crooks v. Maynard*, 732 P.2d 281, 286 (Idaho1987). This logically means that the Commissioners cannot properly supervise judicial officials in their hiring and firing practices. *Cf. Estep v. Comm'rs of Boundary Cnty.*, 834 P.2d 862, 864 (Idaho 1992) ("a judicial officer . . . is not governed by an order of the Commissioners regarding her hiring policies").

County prosecutors are judicial officials. *See* Idaho Const., Art. 5, § 16; *State v. Wharfield,* 236 P. 862 (Idaho 1925) (prosecutor is a judicial official, cited with approval in *Crooks*, 732 P.2d at 284). And when Smith hires and fires staff to assist him in carrying out his judicial duties, he is acting as a judicial official and thus cannot properly be supervised by the County Commissioners – notwithstanding Idaho statutes that may suggest otherwise. *See Estep*, 834 P.2d at 864. The Court thus concludes that the Commissioners will not be liable for the county prosecutor's actions absent a showing that, regardless of any constitutional constraints, the Commissioners nevertheless inserted themselves into the Prosecutor's personnel decisions. Any amended complaint seeking to hold the Commissioners individually liable should therefore contain specific factual allegations supporting a conclusion that, notwithstanding the Idaho constitution, the Commissioners supervised or otherwise involved themselves in the Prosecutor's personnel decisions.

3.      **Count III – Procedural Due Process**

Timothy concedes that Count III should be construed "as asserting a claim for monetary damages arising only from Defendants' denial of Timothy's procedural due process rights in violation of the Fourteenth Amendment." *Id.* at 10.

A Section 1983 claim based upon procedural due process contains two elements: (1) a deprivation of liberty or property interest protected by the Constitution; and (2) a denial of adequate procedural protections. *See Brewster v. Bd. of Educ.*, 149 F.3d 971, 982 (9th Cir. 1998) (emphasis added).  As defendants point out, Timothy is attempting to allege both a liberty-interest and a property-interest claim within Count III.  The Court will discuss the sufficiency of each claim in turn.

A.      **The Property-Interest Claim**

Turning first to the property-interest claim, Timothy alleges that she had a property interest in her employment with Oneida County, which entitled her to an administrative hearing before an impartial decisionmaker.  Defendants Smith and Oneida County concede that Timothy has sufficiently pleaded this claim as to them.  The Commissioner defendants argue that Timothy failed to allege that they were personally involved in this deprivation of Timothy's constitutional rights.

For the same reasons discussed above, in connection with Timothy's First Amendment claim, the Court concludes that Timothy has not sufficiently alleged that the Commissioners either (a) personally participated in the decision to deprive Timothy of a hearing before an impartial decisionmaker, or (b) otherwise "caused" this alleged

deprivation.  The Court will, however, allow Timothy the opportunity to amend her complaint.

### B.    The Liberty-Interest Claim

Timothy's liberty-interest claim is based on her allegation that the defendants publicized stigmatizing information about her in connection with her termination.  To establish such a claim, often referred to as a "stigma-plus" claim, plaintiff must show: (1) the public disclosure of a stigmatizing statement; (2) the accuracy of the stigmatizing statement is contested; and (3) the stigmatizing statement is made in connection with the denial of a tangible interest, such as employment, or the alteration of a right or status recognized by state law. *Tibbetts v. Kulongoski*, 567 F.3d 529, 536-37 (9th Cir.2009); *Ulrich v. City & Cnty. of S.F.*, 308 F.3d 968, 982 (9th Cir. 2002).  A plaintiff must also demonstrate that she was deprived of her liberty interest in her reputation without due process of law; in other words, "the availability of adequate process defeats a stigma-plus claim." *Segal v. City of New York*, 459 F.3d 207, 213 (2d Cir. 2006).

In this case, Timothy was terminated on March 17, 2014.  She has not alleged that defendants published the fact of her termination (or the reasons for her termination) at that point.  Instead, she is effectively arguing that the defendants made these disclosures within a May 1, 2014 newspaper article.  Within this article, she points to two separate statements – one by the Commissioners and the other by Smith.

First, the Commissioners released this statement, which was quoted in the newspaper article:

The Oneida County Commissioners are aware of the decision made by special prosecutor Mark Hiedeman not to bring criminal charges against Oneida County Prosecutor Dustin Smith. The commissioners fully believe in the importance of an independent investigative agency and special prosecutor handling the case, given the circumstances. Subsequent to the special prosecutor's decision, Mr. Smith has voluntarily repaid the funds to the county and the commissioners consider this matter closed.

Dkt. 9, ¶ 50; Dkt. 9-5.

Second, defendant Smith released the following May 1, 2014 press release, which

was also quoted in article:

Oneida County Prosecuting Attorney, Dustin W. Smith, is pleased to learn that he has been exonerated, that no charges will be brought against him, and that the investigation of him is concluded.

Mr. Smith believes that truth and justice has prevailed in this matter. Mr. Smith thanks and compliments the Idaho State Police and the special prosecutor who reviewed the allegations against him for their efforts and their professionalism. This experience has reaffirmed Mr. Smith's confidence in the justice system.

Mr. Smith possesses no animosity, malice or ill will toward anyone. Instead of speculating about the reasons, the motives, and the timing of the accusations against him, Mr. Smith feels that it is better to simply forgive, forget and move on. Let us put any division behind us, and move forward with optimism, rededication and commitment to doing our job, and doing it well[.]

Dkt. 9, ¶ 52; Dkt. 9-5.

Neither of these statements is sufficient to trigger the requirement that Timothy be

afforded a name-clearing hearing.  As noted above, for such a hearing to be necessary,

the defendants must publicize the fact that the employee was terminated along with the

reasons for that termination.  The above statements do not refer to Timothy by name.

They do not say that Timothy – or any other employee – was terminated.  And, thus, they do not give the reasons for any employee's termination.

Timothy attempts to get around these difficulties by suggesting that a person reading this article would necessarily infer: (1) that she had been fired; and (2) that she had been fired for falsely accusing Smith of misusing public funds.  The Court is not persuaded.  As the Ninth Circuit has explained, "[w]hen reasons [for an employee's dismissal] are not given, inferences drawn from dismissal alone are simply insufficient to implicate liberty interests."  *Bollow v. Fed. Reserve Bank of S.F.*, 650 F.2d 1093, 1101 (9th Cir. 1981).  In short, Timothy's liberty-interest claim fails as a matter of law because she has not sufficiently alleged that defendants publicized her termination or the reasons for it.  The Court will therefore dismiss this claim without leave to amend.  Any conspiracy claim based on this alleged constitutional violation is also dismissed without leave to amend, as Timothy cannot allege the underlying constitutional violation.

## 4.    Conspiracy

The last of Timothy's constitutional claims are the conspiracy claims tied to (1) her First Amendment claim, and (2) her Fourteenth Amendment, property interest claim. *See Am. Comp.,* Dkt. 9, ¶¶ 4, 118.

Preliminarily, "[c]onspiracy is not itself a constitutional tort under § 1983.  *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 935 (9th Cir. 2012).  As the Ninth Circuit has explained, an alleged conspiracy "does not enlarge the nature of the claims asserted by the plaintiff, as there must always be an underlying constitutional violation. Conspiracy

may, however, enlarge the pool of responsible defendants by demonstrating their causal

connections to the violation . . . ." *Id.*

And so it is here.  Timothy has adequately alleged two constitutional claims

against Smith and Oneida County – her First Amendment retaliatory discharge claim and

her Fourteenth Amendment procedural due process claim (the property-interest claim).

With her conspiracy claims, she is seeking to enlarge the pool of responsible defendants

to include the three individual Commissioners.

To state a conspiracy claim under § 1983, a plaintiff must show (1) an agreement

between the defendants to deprive the plaintiff of a constitutional right, (2) an overt act

in furtherance of the conspiracy, and (3) a constitutional deprivation. *Gilbrook v. City of

Westminster*, 177 F.3d 839, 856-57 (9th Cir. 1999). "To be liable, each participant in the

conspiracy need not know the exact details of the plan, but each participant must at least

share the common objective of the conspiracy." *United Steelworkers of Am. v. Phelps

Dodge Corp.*, 865 F.2d 1539, 1541 (9th Cir. 1989). Because conspiracies are secret

agreements, "[a] defendant's knowledge of and participation in a conspiracy may be

inferred from circumstantial evidence and from evidence of the defendant's actions."

*Gilbrook*, 177 F.3d at 856-57. Nevertheless, the Ninth Circuit requires a plaintiff

alleging a conspiracy to violate civil rights to state specific facts to support the existence

of the claimed conspiracy. *Burns v. Cnty. of King*, 883 F.2d 819, 821 (9th Cir. 1989)

("To state a claim for conspiracy to violate one's constitutional rights under § 1983, the

plaintiff must state specific facts to support the existence of the claimed conspiracy.").

As presently drafted, the conspiracy claims fail because Timothy has not alleged specific facts from which an agreement to deprive Timothy of her constitutional rights can be inferred.  Instead, the amended complaint mentions the terms "conspire" or "conspiracy" just three times, in short, conclusory paragraphs.  *See Am. Comp.*, Dkt. 9, ¶ 4, 118, 119.  Such conclusory allegations are insufficient, and Timothy's complaint does not otherwise adequately explain which facts she is relying upon to support the alleged conspiracies.  Likewise, Timothy has not adequately explained the factual basis for the alleged conspiracy in her responding brief.

In responding to the motion to dismiss, Timothy's lead argument is that she adequately alleged a conspiracy simply by alleging that defendants "Daniels, Tubbs and Firth were the *Oneida County* Commissioners and Prosecutor Smith was the *Oneida County* Prosecutor *when* Timothy, who was an *Oneida County* employee, was (1) terminated and (2) denied a hearing to contest her termination, . . . ." *Response Br.*, Dkt. 18, at 18 (emphasis in original).  The Court is not persuaded.  Based on the governing legal standard described above, Timothy must do more than just point out that each individual held a position with Oneida County at the time an Oneida County employee was terminated.

Otherwise, Timothy mainly argues that she adequately alleged a conspiracy by alleging facts demonstrating that the alleged conspirators plausibly shared a common motive:  to get rid of Timothy.  More specifically, Timothy points out that her speech was damaging not only to Smith, but to the Commissioners as well.  The Commissioners had

approved a deal – hiring Smith's wife as a part-time secretary – that may have violated

that County's anti-nepotism policy.  Still, though, Timothy must do more than allege that

the conspirators had common interests or motivations; she must point to facts showing

that these defendants reached an agreement to deprive her of her constitutional rights.  As

currently drafted, Timothy's complaint does not do this.

The Court will therefore dismiss the conspiracy claims, but will allow Timothy the

opportunity to amend her complaint.  Any amended complaint must either allege new

facts supporting the existence of an agreement, or Timothy must more specifically

identify which alleged facts support an inference that the conspirators not only shared a

common motive with Smith, but that they reached an agreement.

**5.     Count IV – Whistleblower Claim**

Count IV alleges that all defendants violated the Idaho Protection of Public

Employees Act, Idaho Code §§ 6-2101 *et seq.*  This Act – commonly referred to as the

whistleblower statute – "seeks to protect the integrity of the government 'by providing a

legal cause of action for public employees who experience adverse action from their

employer as a result of reporting waste and violations of a law, rule or regulation.'"

*Patterson v. State Dept. of Health & Welfare*, 256 P.3d 718, 724 (Idaho 2011) (*quoting*

*Van v. Portneuf Med. Ctr.*, 212 P.3d 982, 987 (Idaho 2009)).

The individual defendants (Smith and the Commissioners) argue that this claim

should proceed only against Oneida County only.  In response, Timothy says she is not

seeking to recover from the individual defendants "in their individual capacity; but as

individuals acting in their official capacity." *Response Br.,* Dkt. 18, at 22.  The upshot is that all parties apparently concede that the individual defendants will not be personally liable on this claim if Timothy prevails; only the County would be liable.

Timothy insists she has the right to sue these individuals in their official capacity, but does not explain why she needs to engage in the redundancy of naming the individuals and the County.  The Court will dismiss this claim against the individuals as redundant.  *Cf. Juncewicz v. Patton*, No. 01-CV-0519E (SR), 2002 WL 31654957, at *5 (W.D.N.Y. 2002) (dismissing § 1983 claim against county commissioners in their official capacity as being redundant).

The Court observes that dismissing the individual defendants from this claim is in keeping with Idaho Rule of Civil Procedure 3(b).  With some exceptions, this rule instructs plaintiffs suing governmental units to designate only the governmental unit itself, not the "individuals constituting the officers of the governing boards of governmental units . . . ."  Idaho R. Civ. P. 3(b).  Nevertheless, the Court is not persuaded by defendants' ultimate argument that this Court is bound to apply this state procedural rule.  *See generally United States for Use of Acme Granite & Tile Co. v. F.D. Rich Co.*, 441 F.2d 1143, 1144 (9th Cir. 1971) (district court bound by Federal Rules of Civil Procedure, not state procedural rules).  Rather, as noted, the Court dismissed the claims against the individuals due to redundancy.

**6.     Count V – Negligent Infliction of Emotional Distress (NIED)**

The parties seemingly concede that if the Commissioners were not personally

involved in Timothy's termination, they will not be liable on the claim for negligent infliction of emotional distress.  The Court will therefore dismiss the Commissioners as defendants on this claim. As with the other claims, Timothy will be afforded an opportunity to amend this claim in an effort to state a claim against the Commissioners individually.  If she chooses to amend, Timothy should lay out the elements of the claim more plainly than she has done in her current complaint.  *See, e.g., Am. Comp.*, Dkt. 9, ¶ 131 (alleging only that the defendants "are liable for the negligent infliction of emotional distress caused by their action and inaction as detailed hereinabove and experienced by Timothy"); *see generally Johnson v. McPhee,* 210 P.3d 563, 574 (Idaho Ct. App. 2009) (elements of NIED are: (1) duty; (2) breach; (3) causal connection between the conduct and injury; and (4) actual loss or damage).

### 7.       Count VII – Intentional Infliction of Emotional Distress (IIED)

Finally, the Court will dismiss Timothy's claim for intentional infliction of emotional distress.  In Idaho, "an action for intentional infliction of emotional distress will lie only where there is extreme and outrageous conduct coupled with severe emotional distress." *Walston v. Monumental Life Ins. Co*., 923 P.2d 456, 464 (Idaho 1996) (citation omitted).  To prevail on this cause of action a plaintiff must show: (1) that the defendant acted intentionally or recklessly; (2) that the defendant's conduct was extreme and outrageous; (3) that there was a causal connection between the defendant's conduct and the plaintiff's emotional distress; and (4) that the plaintiff's emotional distress was severe. *Id.*

To qualify as "extreme and outrageous," the defendant's conduct must be more than merely objectionable or unreasonable: it must be "'atrocious' and 'beyond all possible bounds of decency' that would cause an average member of the community to believe it was 'outrageous.'" *Edmondson v. Shearer Lumber Prod.*, 75 P.3d 733, 741 (Idaho 2003).  Examples of conduct that have been deemed sufficiently extreme and outrageous by Idaho courts include: an insurance company speciously denying a grieving widower's cancer insurance claim while simultaneously impugning his character and drawing him into a prolonged dispute;[3] prolonged sexual, mental, and physical abuse inflicted upon a woman by her co-habiting boyfriend;[4] recklessly shooting and killing someone else's donkey that was both a pet and a pack animal;[5] and real estate developers swindling a family out of property that was the subject of their lifelong dream to build a Christian retreat.[6]

Here, Timothy generally relies on the facts surrounding her termination to show extreme and outrageous behavior.  These general allegations are not sufficient to support an IIED claim.  Timothy has also alleged that Smith yells and throws chairs around the office.  No more specific details are provided.  Obviously, yelling and throwing chairs is

---

[3] *Walston,* 923 P.2d at 464-65.

[4] *Curtis v. Firth*, 850 P.2d 749, 756-57 (Idaho 1993).

[5] *Gill v. Brown*, 695 P.2d 1276, 1277-78 (Idaho Ct. App. 1985).

[6] *Spence v. Howell*, 890 P.2d 714, 724-25 (Idaho 1995).

**MEMORANDUM DECISION AND ORDER - 24**

not exemplary behavior.  But the Court needs more detail to determine whether Smith's behavior was atrocious and beyond all possible bounds of decency.  If he did this sort of thing every day, as a matter of course in dealing with office staff, then his conduct would be considered extreme and outrageous.  But the Court would be less likely to reach this conclusion if Smith threw a chair on one or two occasions over the course of many years.

Given the lack of detail regarding Smith's allegedly "extreme and outrageous" behavior, the Court concludes that Timothy has failed to state a claim for intentional infliction of emotional distress.  The Court will therefore dismiss this claim, but it will do so without prejudice.  Timothy may amend her claim to provide additional factual detail regarding Smith's allegedly extreme and outrageous behavior.

The Court is not persuaded by defendants' argument that Timothy failed to sufficiently allege "severe" emotional distress.  Idaho courts often quote the following commentary to the Restatement of Torts in describing how "severe" the emotional distress must be:

> Emotional distress passes under various names, such as mental suffering, mental anguish, mental or nervous shock, or the like. It includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. It is only where it is extreme that the liability arises. Complete emotional tranquility is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people. The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity.

MEMORANDUM DECISION AND ORDER - 25

Restatement (Second) of Torts § 46 cmt. j (1965) (as quoted in *Alderson v. Bonner*, 132 P.3d 1261, 1269 (Idaho Ct. App. 2006)).  Additionally, in evaluating whether the alleged distress is sufficiently severe, Idaho courts consider whether plaintiffs "incurred any physical damage or were hampered in the performance of their daily functions ... [or] suffered a severely disabling emotional response." *Alderson,* 132 P.3d at 1269 (quoting *Davis v. Gage*, 682 P.2d 1282, 1288 (Idaho Ct. App. 1984)).

Timothy alleges that she "has suffered and continues to suffer severe emotional distress, including, but not necessarily limited to depression, sleep disorders, reduced libido, fatigue, crying, loss of appetite, and emotional instability." *Am. Comp.*, Dkt. 9, ¶ 144.  Notably, the intensity and duration of the distress are factors to be considered in determining its severity.  As a result, the Court is not persuaded by defendants' argument that plaintiff has alleged only garden-variety distress.  If the reactions described in her complaint were intense and lasted for a lengthy period, then they could rise to the level of severity required to succeed on the tort.  *See Davis*, 682 P.2d at 1288.

## ORDER

**IT IS ORDERED that:**

1. Defendants' Motion for Partial Dismissal (Dkt. 13) is **GRANTED in part and DENIED in part** as follows:

   a. Count I (Injunctive and Declaratory Relief) is dismissed without leave to amend, though Timothy may continue to seek injunctive relief in connection with other independent claims, as explained above.

   b. Count II (First Amendment) is dismissed, with leave to amend, as to the Commissioner defendants.

**MEMORANDUM DECISION AND ORDER - 26**

    c. Count III (Fourteenth Amendment):  The liberty-interest claim alleged within Count III is dismissed without leave to amend.  The property-interest claim alleged within Count III is dismissed, with leave to amend, as to the Commissioner defendants (Daniels, Tubbs, and Firth).

    d. The conspiracy claim based on the alleged liberty-interest claim is dismissed without leave to amend.  The remaining two conspiracy claims are dismissed with leave to amend.

    e. Count IV (Whistleblower) is dismissed, without leave to amend, as to the individual defendants.

    f. Count V (Negligent Infliction of Emotional Distress) is dismissed, with leave to amend, as to the Commissioner defendants.

    g. Count VII (Intentional Infliction of Emotional Distress), alleged against Smith only, is dismissed with leave to amend.

2. Timothy may file an amended complaint within 30 days of this Order.

3. The parties' unopposed Motions for Leave to File Excess Pages (Dkts. 12, 17) are

**GRANTED.**

DATED: April 30, 2015

B. Lynn Winmill
Chief Judge
United States District Court