# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| HEATHER S. TIMOTHY, an individual,<br><br>    Plaintiff,<br><br>    v.<br><br>ONEIDA COUNTY, a political subdivision of the state of Idaho; DUSTIN W. SMITH, individually and in his capacity as Prosecuting Attorney for Oneida County, Idaho; SHELLEE DANIELS, DALE F. TUBBS and MAX C. FIRTH, individually and in their capacities as Oneida County Commissioners,<br><br>    Defendants. | Case No. 4:14-cv-00362-BLW<br><br>MEMORANDUM DECISION AND ORDER |

Before the Court are the following motions: (1) Plaintiff Heather S. Timothy's Motion to Reconsider (Dkt. 24); and (2) Defendants Oneida County, Dustin Smith, Shelle Daniels, Dale Tubbs, and Max Firth's Motion for Partial Dismissal (Dkt. 28). For the

MEMORANDUM DECISION AND ORDER - 1

reasons set forth below, the Court will deny Timothy's motion to reconsider and grant Defendants' motion for partial dismissal.

## ANALYSIS

1. **Motion to Reconsider**

In the Court's previous decision on Defendants' Motion to Dismiss, the Court dismissed, *without* leave to amend, Timothy's "liberty interest" due process claim based on her allegation that Defendants publicized stigmatizing information in connection with her termination. *MDO dated April 30, 2015*, p. 16, Dkt. 23. In dismissing this claim, the Court found that Defendants never publicized the fact that Timothy was terminated along with the reasons for her termination. The Court based this finding on the fact that the allegedly offending article published on May 1, 2014, which supposedly contained the stigmatizing statements, never mentioned Timothy by name, never said she had been terminated, and did not identify any reasons for her termination. The Court dismissed Timothy's liberty-interest due process claim without leave to amend.

Now, however, Timothy asks the Court to reconsider its dismissal of the liberty-interest due process claim on the grounds that Timothy has discovered new evidence, which was not available at the time she filed her First Amended Complaint. This new evidence, according to Timothy, shows that Prosecutor Dustin Smith publicized her termination and the reasons for it.

Although motions for reconsideration are not specifically addressed in the Federal Rules of Civil Procedure, they are generally allowed under Rule 59(e). *389 Orange Street*

*Partners v. Arnold,* 179 F.3d 656, 665 (9th Cir. 1999). Reconsideration of a court's prior ruling under Federal Rule of Civil Procedure 59(e) is appropriate "if (1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or (3) there is an intervening change in controlling law." *S.E.C. v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1100 (9th Cir. 2010) (citation omitted). Timothy argues that reconsideration is appropriate in this case on the basis that she presents newly discovered evidence.

Timothy argues that she has uncovered new evidence showing that (1) Smith complained to his friend, Kristin Smith, about Timothy; (2) Smith complained about Timothy in front of three sheriff's deputies, and (3) Smith disclosed to other members of the community that he intended to fire Timothy.

The first allegedly stigmatizing statements that Timothy identifies were set forth in two emails Smith sent to his friend, Kristine Smith, who works at a local newspaper. In the February 5, 2015, Smith contacted Kris Smith to ask for advice about how to handle a text message he had inadvertently received from Timothy in which she bad mouthed and poked fun at him. *Sec. Am. Compl.*, Ex. R Dkt. 25-23. In the second email sent on February 10, Smith vented to his friend about what was happening regarding the investigation into him and a potential lawsuit by Timothy.

Defendants argue that these statements were not publicly disclosed as they were said in confidence to a friend in a private email. "Unpublicized accusations do not infringe constitutional liberty interests because, by definition, they cannot harm good name,

reputation, honor, or integrity." *Bollow v. Fed. Reserve Bank of San Francisco*, 650 F.2d 1093, 1101 (9th Cir. 1981) (internal quotation marks omitted).

It questionable whether Smith's sending emails to his friend "seeking advice" and "venting" would constitute public disclosure. "The defamatory statement must be sufficiently public to create or threaten a stigma; hence, a statement made only to the plaintiff, and only in private, ordinarily does not implicate a liberty interest." *Velez v. Levy*, 401 F.3d 75, 87 (2d Cir. 2005). On the other hand, Kris Smith did not work in the prosecutor's office and was technically a member of the public. Smith had no business reason to disclose Timothy's work status to his friend, and Kris Smith had no obligation to keep Smith's statements in confidence. Therefore, for purposes of this motion, the Court will consider the statements "published." *C.f. See* Restatement (Second) of Torts § 577 (2006) ("Publication of defamatory matter is its communication intentionally or by a negligent act to one other than the person defamed.").

However, neither Smith's statements in his emails to Kris Smith nor any other statement Timothy identifies rise to the level of stigmatizing Timothy in the constitutional sense. The stigma imposed must be severe and genuinely debilitating before the discharge can rise to a level of constitutional concern. *Bollow v. Fed. Reserve Bank of San Francisco*, 650 F.2d 1093, 1101 (9th Cir. 1981). In *Bollow,* the Ninth Circuit "described the stigma that infringes liberty interests as that which "*seriously* damages a person's reputation or *significantly* forecloses his freedom to take advantage of other employment opportunities." *Id.* (emphasis added) (internal quotations marks omitted.).

This boundary has been set by the Ninth Circuit "at accusations of 'moral turpitude,' such as dishonesty or immorality, [and] charges that do not reach this level of severity do not infringe constitutional liberty interests." *Id.*

In his emails to Kris Smith, Smith sought advice from Ms. Smith regarding a text message Smith received from Timothy by accident. In the text, Timothy "bad-mouthed" and "poked fun" at Smith. According to Smith, he confronted Timothy about the text message, and she defended it as "the truth," but Smith told Timothy he could not trust her and was ready to fire her. *Feb. 5, 2014 Email* from *Smith to Kristine Smith*, Ex. R, Dkt. 25-23. In another email in which Smith "vented" to Kris Smith, Smith expressed concerns about the investigation concerning his use of public funds and stated that Timothy was the "wrong-doer." *Feb. 10, 2014 Email from Smith to Kristine Smith*, Ex. K, Dkt. 25-11. Smith's statements accusing Timothy of being the wrongdoer, saying mean things about him, and suggesting that he could no longer trust her are insufficiently egregious to activate the protections of the Due Process Clause. These are not the types of charges of immorality or dishonesty that can cripple an individual's ability to earn a living.

With respect to statements Timothy apparently made to three sheriff's deputies, Timothy does not identify the content of those statements. Timothy merely alleges that Smith "complained" about her to the deputies, criticized her association with Sheriff Semrad, and falsely accused Sheriff Semrad of trying to get Timothy moved to his

department. Nothing in Timothy's allegations suggests that Smith's statements to the deputies were so severe as to prevent Timothy from earning a living.

Likewise, Timothy's allegations about the public having general knowledge regarding Smith's plans to terminate Timothy do not give rise to a Due Process claim. Timothy presents no evidence that Smith himself disseminated the information to the community. And, as Defendants point out, Smith cannot control the local rumor and gossip mill and has no constitutional duty to control rumors. *See, e.g., Hughes v. City of Garland*, 204 F.3d 223, 227-228 (5th Cir. 2000) (casual gossip and rumors in the community about events leading up to plaintiff's termination insufficient to constitute public disclosure).

Accordingly, Timothy's motion to reconsider is denied on both the liberty-interest due process claim against Smith and the attendant conspiracy claim against the Commissioners.

### 2. Motion to Dismiss

On April 30, 2016, the Court issued a decision granting in part and denying in part Defendants' first motion to dismiss. The Court allowed Timothy leave to amend the majority of claims it dismissed, with the exception of the liberty-interest due process claim discussed above. On June 17, 2015, Timothy filed her Second Amended Complaint and Demand for Jury Trial. Defendants now seek to dismiss the following claims re-alleged in the most recent amended complaint: (1) the First Amendment retaliation claims against the individual Commissioners; (2) the Fourteenth Amendment procedural due

process claim against the individual Commissioners' (3) the related conspiracy claim; and (4) the state whistleblower claim against Smith.

### A. *First Amendment Retaliation Claim, Due Process Claim, and Related Conspiracy Claim*

In its earlier decision on Defendants' first motion to dismiss, the Court dismissed Timothy's First Amendment retaliation claim, the due process claim, and related conspiracy claim against the individual Commissioners on the grounds that Timothy failed to allege facts suggesting that the Commissioners participated in the decision to fire Timothy or somehow set in motion a series of events that they reasonably should have known would have led to Timothy's dismissal. *MDO dated April 30, 2015,* p. 13-14, Dkt. 23.

Timothy argues that she has adequately pleaded claims for First Amendment retaliation and Fourteenth Amendment Due Process violations, and the related conspiracy claims, because:

> Defendants have failed to provide any explanation for why Commissioners Daniels, Tubbs, and Firth did the following:
>
> a. agreed to pay Prosecutor Smith – rather than pay his wife – for work his wife was allegedly going to do in the Prosecutor's office,
>
> b. approved direct payments to Prosecutor Smith for his wife's alleged work in the Prosecutor's office based upon unsigned warrants in February, March, April, May, June, July and August of 2012,
>
> c. continued to approve direct payments to Prosecutor Smith for his wife's alleged work in the Prosecutor's office based upon unsigned warrants though January of 2014,
>
> d. continued to approve payments to Prosecutor Smith for his wife's alleged work in the Prosecutor's office even after Sheriff Semrad disclosed his investigation into the legality of those payments,

>   e. offered to pay Timothy to voluntarily resign her position and therefore waive any right she may have had to continued employment in the Prosecutor's office,
>
>   f. accepted repayment of money paid to Prosecutor Smith allegedly for his wife's secretarial services (approximately $2900) on or about April 25, 2014, and
>
>   g. ended the Idaho State Police investigation into payments to Prosecutor Smith for his wife's services before that investigation was complete.

*Pl.'s Resp. Br.*, p. 5-6, Dkt. 37. From these facts, Timothy asks the Court to infer that the Commissioners had a reason to want her fired, that they were actually involved in the decision to fire her, and conspired to get her fired.

There is no doubt that Timothy has alleged sufficient facts indicating that the individual Commissioners were complicit in the arrangement to pay Smith directly for part-time secretarial services that Smith intended to pay his wife in order to circumvent the County's anti-nepotism policy. But Timothy has alleged no facts to suggest that the individual Commissioners were complicit in Smith's decision to fire Timothy, or that they somehow set in motion a series of acts by Prosecutor Smith, which they reasonably should have known would cause Smith to terminate Timothy and deprive her of a post-termination hearing. While it is possible that the Commissioners would have conspired with Smith to fire Timothy for speaking out for Timothy's voicing her concerns about Smith's use of public funds, it is equally possible that the Commissioners would not wanted to compound an arguably bad decision to approve the payment arrangement by conspiring with Smith to get rid of Timothy for speaking out. Indeed, none of the alleged

**MEMORANDUM DECISION AND ORDER - 8**

facts suggest that the individual Commissioners had anything to gain from Timothy's dismissal.

The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557. Here, Timothy has failed to allege facts that would bring her claims against the Commissioners across the line from mere possibility to plausibility; therefore the First Amendment retaliation claim and the due process, as well as the related conspiracy claim, must be dismissed.

At this juncture, the Court will not grant Timothy leave to amend a second time on these claims, but the Court would entertain a motion for leave to amend if Timothy comes across evidence suggesting the Commissioners did have something to do with the decision to terminate her employment.

### B.  *State Whistleblower Claim*

Timothy has conceded that she is not seeking to recover from the individuals in their individual capacities, and the Court dismissed them in their official capacities as redundant. *MDO dated April 30, 2015,* p. 21-22, Dkt. 23. However, Timothy's Second Amended Complaint still identifies Smith as a defendant in this claim. The Court assumes the continued inclusion of Smith as a defendant to the claim was an oversight. Regardless, to clarify, Timothy cannot proceed on this claim against any individual for the reasons already stated by the Court.

**MEMORANDUM DECISION AND ORDER - 9**

**ORDER**

IT IS ORDERED that:

1. Plaintiff Heather S. Timothy's Motion to Reconsider (Dkt. 24) is DENIED; and

2. Defendants Oneida County, Dustin Smith, Shelle Daniels, Dale Tubbs, and Max Firth's Motion for Partial Dismissal (Dkt. 28) is GRANTED.

DATED: November 10, 2015

_____
B. Lynn Winmill
Chief Judge
United States District Court