UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

HEATHER S. TIMOTHY, an individual,

Plaintiff,

v.

ONEIDA COUNTY, a political subdivision of the State of Idaho; and DUSTIN W. SMITH, individually and in his capacity as Prosecuting Attorney for Oneida County, Idaho,

Defendants.

Case No. 4:14-cv-00362-BLW

MEMORANDUM DECISION AND ORDER

**INTRODUCTION**

There are five motions pending before the Court: (1) Defendants' Motion for a Protective Order; (2) Plaintiff Heather Timothy's Motion for Partial Summary Judgment; (3) Defendants Oneida County and Dustin Smith's Cross-Motion for Partial Summary Judgment; (4) plaintiff's Motion for a Rule 56(d) Continuance; and (5) the parties' Joint Stipulated Motion to Extend Discovery Deadlines because of ongoing, unresolved discovery disputes. *See* Dkts. 56, 41, 46, 51, and 58, respectively. For the reasons explained below, the Court will: (a) grant in part and deny in part Defendants' motion for a protective order; (b) grant plaintiff's motion for a continuance; (c) deny all pending

motions for summary judgment without prejudice; and (d) extend the discovery and dispositive-motion filing deadlines by approximately 90 days.

## FACTUAL BACKGROUND

Plaintiff Heather Timothy was employed by Oneida County Prosecuting Attorney Dustin Smith in his public and private office from 2005 until her termination in March 2014. Timothy claims she was fired because she reported that Smith was misusing public funds. Timothy said Smith was paying himself monies for part-time secretarial services even though the Oneida County prosecutor did not employ a part-time secretary. Timothy reported her concerns to Oneida County Sheriff Jeff Semrad, who conducted an investigation of the matter. Ultimately, Smith was not prosecuted for the alleged misappropriation.

Timothy alleges five claims in this action: (1) retaliatory discharge in violation of the First and Fourteenth Amendments; (2) denial of due process in violation of the First and Fourteenth Amendments; (3) termination of public employment in violation of Idaho law; (4) negligent infliction of emotional distress; and (5) termination of private employment in violation of public policy.

## PROCEDURAL BACKGROUND

In February 2015, the Court entered a Case Management Order, establishing various litigation deadlines, including a February 8, 2016 discovery cutoff and a March 8, 2016 cutoff for filing dispositive motions. *Case Management Order*, Dkt. 21, ¶¶ 2, 5. The Court later extended those deadlines by roughly two months, such that the extended discovery cutoff was April 8, 2016, and the extended dispositive-motion deadline was

May 9, 2016. *See Amended Case Management Order*, Dkt. 48, ¶¶ 1, 5.

In December 2015 – well before these deadlines expired – Timothy filed her motion for partial summary judgment. *See* Dkt. 41. Defendants responded with a cross-motion for partial summary judgment on Timothy's due process claim. *See* Dkt. 46. As to the other claims, defendants indicate that, at this point, they are simply responding to plaintiff's motion for summary judgment, but nevertheless hint that may file their own motion for summary judgment on these claims when discovery concludes. *See Motion Mem.*, Dkt. 46-1, at 17 n.4.

Defendants' cross-motion for partial summary judgment on the due-process claim prompted Timothy to file a motion to continue under Federal Rule of Civil Procedure 56(d). *See* Dkt. 51. Timothy now says she needs more time to conduct discovery on the due process claim – despite having filed her own motion for summary judgment on that claim. In seeking a continuance, Timothy says she has been unable to depose the defendants "due to ongoing discovery disputes." *Id.* at 2. As defendants point out, however, this alleged inability to depose the defendants did not prevent Timothy from moving for summary judgment in the first place. Moreover, despite asking the Court to allow her more time to conduct discovery on the second claim, Timothy incongruously continues to ask the Court "to rule, as a matter of law, that the hearing offered Timothy did not comply with the Due Process Clause of the U.S. Constitution." Dkt. 52, at 4. Defendants justifiably complain that plaintiff's litigation tactics are prejudicial. They ask the Court to deny the motion for a continuance and issue a ruling on their cross-motion for partial summary judgment. Alternatively, defendants ask the Court to "postpone

ruling on both parties' summary judgment motions on due process until after discovery is completed and avoid having it presented in such a confusing, piecemeal, and legally incorrect manner . . . ." Dkt. 54, at 5.

Meanwhile, the parties have been engaged in a discovery dispute, with the defendants ultimately refusing to produce some witnesses (including Defendants Smith and Oneida County) for deposition until the Court clarifies whether certain lines of questioning will be permitted. After an unsuccessful attempt to informally mediate the discovery dispute with Court staff, defendants filed a motion for a protective order. Dkt. 56. The parties say the litigation has reached a standstill because they are unable to proceed with the depositions until the Court weighs rules on the motion for a protective order. They therefore ask the Court to again extend the discovery and dispositive-motion cutoffs.

## ANALYSIS

The Court will resolve each motion in turn, beginning with defendants' motion for a protective order.

### 1. Defendants' Motion for a Protective Order

Federal Rule of Civil Procedure 26(c) authorizes district courts to issue "any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden." Fed. R. Civ. P. 26(c). The Supreme Court has interpreted this language as conferring "broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). As the Court observed, "[t]he unique character

of the discovery process requires that the trial court have substantial latitude to fashion protective orders." *Id.* (as quoted in *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211-12 (9th Cir. 2002)).

In seeking a protective order, defendants focus on the recent amendments to Federal Rule of Civil Procedure 26(b)(1).[1] The amendments to this rule allow discovery of

> any nonprivileged matter that is relevant to any party's claim or defense *and is proportional to the needs of the case*, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1) (emphasis added).

### A. Defendants' Request for Limitations on Discovery Regarding the Part-Time-Secretarial Services Arrangement

Defendants focus on the proportionality language in Rule 26(b)(1). They say that Timothy's discovery efforts regarding the payments Oneida County made to Dustin Smith for part-time secretarial services are "grossly disproportionate to its relevance in this case." *Motion,* Dkt. 56, at 7. In advancing this argument, defendants emphasize that they have conceded key elements of Timothy's First Amendment and state whistleblower claims.

---

[1] These amendments govern all proceedings in civil cases thereafter commenced and, insofar as just and practicable, in all proceedings then pending. The Court finds that applying the standards of Rule 26(b)(1), as amended, to defendants' motion for a protective order is just and practicable.

Regarding the First Amendment claim, the Ninth Circuit employs a "sequential five-step series of questions" to determine whether an employer impermissibly retaliated against an employee for protected speech:

> (1) whether the plaintiff spoke on a matter of public concern;
>
> (2) whether the plaintiff spoke as a private citizen or public employee;
>
> (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action;
>
> (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and
>
> (5) whether the state would have taken the adverse employment action even absent the protected speech.

*Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009). Defendants concede that Timothy spoke on a matter of public concern, and, further, that she spoke as a private citizen. Significantly, however, defendants are not willing to concede that Timothy's protected speech was a substantial or motivating factor in their decision to terminate her.

Timothy's claim under Idaho's Whistleblower Act is defined in Idaho Code section 6-2105(4), which provides:

> To prevail . . ., the employee shall establish, by a preponderance of the evidence, that the employee has suffered an adverse action because the employee, or a person acting on his behalf engaged or intended to engage in an activity protected under section 6-2104, Idaho Code.

*See also Van v. Portneuf Med. Ctr.*, 212 P.3d 982, 987-88 (2009). Section 6-2104, in turn, states:

> (1)(a) An employer may not take adverse action against an employee because the employee, or a person authorized to act on behalf of the

> employee, communicates *in good faith* the existence of any waste of public funds, property or manpower, or a violation or suspected violation of a law, rule or regulation adopted under the law of this state, a political subdivision of this state or the United States. Such communication shall be made at a time and in a manner which gives the employer reasonable opportunity to correct the waste or violation.
>
> (b) For purposes of subsection (1)(a) of this section, an employee communicates in good faith if there is a reasonable basis in fact for the communication. Good faith is lacking where the employee knew or reasonably ought to have known that the report is malicious, false or frivolous.

(emphasis added).

As to this claim, defendants "acknowledge that Plaintiff had a good faith basis to bring her allegations to Sheriff Semrad and to participate in the ISP investigation." *Motion*, Dkt. 56, at 9. Again, however, the defendants are unwilling to concede that they took "adverse action against [Timothy] *because* [she] . . . communicate[d]" her allegations to Sheriff Semrad and the ISP investigation.[2]

Defendants say that, in light of their concessions, plaintiff should focus her discovery efforts on the reasons for her termination – not on the particulars of the part-time secretarial services arrangement between Smith and Oneida County. Defendants report that Timothy is instead devoting "an inordinate amount of discovery into the issue

---

[2] Although the parties did not discuss this in their briefing, the issue of whether Timothy was discharged because of her protected activities may also be relevant to her claim that she was discharged in violation of public policy, since the issue there is whether "the motivation for discharge contravenes public policy." *Edmonson v. Shearer Lumber Prods.*, 75 P.3d 733, 737 (Idaho 2003).

of potential criminal culpability of Smith and the county commissioners related to the authorization of part-time secretarial services performed by Dustin Smith's wife in 2012 through 2014, even though this issue has limited relevance." *Motion*, Dkt. 56, at 8. Defendants say that "what is taking place is obviously an attempt by plaintiff to re-construct and try the criminal issues relating to the part-time secretarial payments instead of trying to prove whether her termination was lawful or her due process rights (if any) denied." *Id.* at 9. Defendants thus seek a protective order preventing Timothy from conducting any further discovery into the issue of part-time secretarial payments other than the deposition of Dustin Smith.

In response, Timothy says the arrangement regarding part-time secretarial services payments is, in fact, relevant to why she was terminated. Her theory of the case is that the secretarial-services arrangement was illegal, and that this, in turn motivated Smith to fire her to cover up his own allegedly wrongful actions. Timothy explains her theory as follows:

> The special prosecutor announced his decision not to charge Smith for misappropriating public funds only after Timothy had already been terminated by Smith. When Smith terminated Timothy, Smith did not know whether he would be charged or not. When Smith terminated Timothy, all Smith knew was whether or not he had misappropriated funds for part-time secretarial services. Whether Smith, when he terminated Timothy, knew he had misappropriated funds from Oneida County, is relevant to whether Smith, when he terminated Timothy, was retaliating against her for reporting his alleged misappropriation of funds to the Sheriff. If Smith knew, when he terminated Timothy, that he was guilty of misappropriating funds and was therefore likely facing criminal charges and disbarment, his motive for retaliating against Timothy for reporting him to the Sheriff would have been much greater than if he knew he was innocent.

*Response Br.*, Dkt. 55, at 5.

To a certain extent, plaintiff's arguments regarding Smith are not responsive to defendants' motion, since defendants concede that plaintiff should be allowed to question Smith about the part-time secretarial services arrangement.[3] Indeed, the defendants' concession would permit Timothy to fully explore with Smith the question which is central to their argument for expansive discovery – "whether [he] knew, when he terminated Timothy, that he was guilty of misappropriating funds and was therefore likely facing criminal charges and disbarment." *Id.* The more pressing issue is whether Timothy should be prevented from asking any further questions of other witnesses about part-time secretarial services, or otherwise conducting discovery into the issue. In other words, should Timothy be allowed to use discovery in this case to fully re-open the investigation of Smith's conduct?

The Court begins by observing that the secretarial-services arrangement is clearly relevant to this action. As noted above, Timothy claims she was fired because she told Sheriff Semrad that Smith was accepting payments from Oneida County for part-time secretarial services that were not actually being rendered. The particulars of the arrangement are therefore relevant in the sense that they may lead to discoverable information. *See generally* Fed. R. Evid. 401 (defining relevant evidence); Fed. R. Civ. P

[3] There is one exception; defendants say Timothy should not be permitted to ask questions about Exhibit L. That issue is addressed below, in paragraph B.

26(b)(1) ("Information within [the] scope of discovery need not be admissible in evidence to be discoverable").

On the other hand, in light of defendants' concessions, it would seem that Timothy's discovery efforts can and should focus on information regarding why she was fired – as opposed to delving into the details of the secretarial payment arrangement. But that process cannot be as circumscribed as defendants wish. While discovery should be focused exclusively on what role Timothy's whistleblowing activity played in the decision by Smith – or any other decisionmaker – to terminate her employment, there are presumably a number of other individuals who will have information about what Smith knew and understood about the investigation when he decided to terminate Timothy. Therefore, that subject cannot be off-limits in the deposition of others with knowledge of the investigation and the decision to terminate.

What would be excessive and disproportionate to the needs of the case, however, would be to fully re-investigate the allegations made by Timothy and investigated by Sheriff Semrad and the special prosecutor. Plaintiff's claims will fail or succeed based on what Smith knew at the time and whether that knowledge motivated him to discharge her. Those claims will not be materially advanced by information obtained through an expensive, time-consuming, leave-no-stone-unturned discovery effort conducted several years after her termination.

Under these circumstances, the Court will deny defendants' request for a blanket order prohibiting Timothy from conducting further discovery into the part-time secretarial services arrangement. On the other hand, the Court will grant the request to

the extent they seek to restrict Timothy from inquiring into those arrangements with other witnesses, except to establish that Timothy's termination was motivated by her complaints.

The Court is mindful that this decision does not provide the parties with a clear roadmap for future discovery. But it is not possible to devise such a roadmap in the abstract. Ideally, a judge could be present at the depositions and resolve objections about any particular question on the spot. But that approach is not feasible. As an alternative, the Court is willing to meet with counsel and establish reasonable guidelines for future discovery. To that end, the Court would expect counsel to meet immediately and confer in good faith to identify a limited number of examples where the parties disagree as to whether certain discovery is or is not relevant and proportional to the needs of the case. The Court will then makes itself available for a short conference with counsel in an effort to create more meaningful guidelines.

**B. Exhibit L**

The Court will deny defendants' request for an order preventing Timothy from asking questions about Exhibit L. Exhibit L is an August 4, 2014 letter defendant Dustin Smith wrote to the Office of Bar Counsel. Smith wrote the letter directly to the Idaho State Bar, in response to a complaint Sheriff Semrad had made against him. Smith says the sole purpose of the letter was to defend himself against Semrad's allegations of misconduct. *Motion,* Dkt. 56, at 3. Plaintiff obtained the letter by submitting a public records request to Sheriff Semrad, who, in turn, produced the letter to her. *See* Dkt. 25-12.

Preliminarily, defendants object to the manner in which plaintiff obtained this document. Plaintiff says she obtained the documents by serving a subpoena *and* a public records request – under Idaho's Public Records Act – to obtain the document directly from Sheriff Semrad. The Idaho legislature clarified, however, that its Public Records Act is not "available to supplement, augment, substitute or supplant discovery procedures" in any federal or state civil action. Idaho Code § 74-115(3). Defendants say that if Timothy had submitted a document request to the County, they would have had a chance to object. Instead, Sheriff Semrad, who is apparently sympathetic to plaintiff, simply turned over the document to the plaintiff without any advance warning to defense counsel.

Regardless of how plaintiff obtained the document, the Court will ultimately have to determine if Exhibit L is properly withheld under the Idaho Bar Commission Rule defendants are invoking. For that reason, the Court will proceed to answer the ultimate, substantive questions regarding Exhibit L, which are: (1) Is Exhibit L a "confidential" document under Idaho Bar Commission Rule 521? and (2) If so, should the Court seal the letter and prohibit plaintiff from conducting any further discovery into the letter?

Defendants contend Exhibit L is a "confidential" document under Idaho Bar Commission Rule 521, which provides as follows:

**RULE 521. Access To Information**

**(a) Availability of Information**. All proceedings and records relating

> to Professional Conduct,[4] except the work product of Bar Counsel, a Hearing Committee or the Professional Conduct Board, shall be available to the public after the filing and service of Formal Charges, unless the Grievant or Respondent obtains a protective order for specific testimony, documents or records.
>
> **(b) Confidentiality**. Prior to the filing and service of Formal Charges, a Professional Conduct matter is confidential, except that the pendency, subject and status of a Professional Conduct matter may be disclosed by Bar Counsel if:
>
> (1) the Lawyer has waived confidentiality in writing;
>
> (2) the matter is based upon allegations that include either the conviction of a crime or public reciprocal discipline;
>
> (3) the matter is based upon allegations that have become generally known to the public; or
>
> (4) there is a need to notify another person or organization, including the Client Assistance Fund, in order to protect the public, the administration of justice, or the legal profession.

Idaho Bar Comm'n R. 521(a), (b).

Smith says that because the bar never pursued formal charges against him, all bar records and proceedings – including Exhibit L – must remain confidential. Timothy does not squarely address this argument, other than to say she would be unfairly sanctioned if she is not permitted to ask questions about Exhibit L.

A threshold problem with defendants' assertion of an Idaho state-law "confidentiality" privilege is that federal courts are not bound to recognize state

[4] Professional Conduct is defined as "conduct that occurs within or without the attorney-client relationship that reflects upon the Lawyer's fitness to practice law." Idaho Bar Comm'n R. 501(k).

privileges in a federal question case. *See generally* Fed. R. Evid. 501; *Garrett v. City & Cnty. of San Francisco*, 818 F.2d 1515, 1519 n.6 (9th Cir. 1987) (personnel files discoverable in a federal civil rights action despite claims of privilege under state law). Here, Timothy has joined federal and state law claims in the same action, but the Ninth Circuit has clarified that claims of privilege are still determined under federal law. *See, e.g., Agster v. Maricopa Cnty.*, 422 F.3d 836, 830 (9th Cir. 2005). Though a federal court may attempt to accommodate the policies reflected in state law,[5] it is still the defendants' burden to justify application of the state rule.

Defendants have not shouldered that burden. In fact, neither side discusses the policy behind Idaho Bar Commission Rule 521 or Idaho Court Administrative Rule 32. The Idaho Supreme Court's policy statement regarding Rule 32 may shed some light on the subject. It provides that a variety of documents that are exempt from disclosure – including "[a]llegations of attorney misconduct received by the Idaho State Bar and records of the Idaho State bar relating to attorney discipline, except where confidentiality is waived under the Idaho Bar Commission Rules." Idaho Court Admin. R. 32(g)(26). In adopting Rule 32, the Supreme Court explained that it was meant to provide access to court records in a manner that, "[p]romotes accessibility to court records," while at the

---

[5] *See Breed v. United States District Court*, 542 F.2d 1114, 1115 (9th Cir.1976) (state privilege law, while not binding in federal question case, can be a useful referent); *Leon v. Cnty. of San Diego,* 202 F.R.D. 631, 635 (S.D. Cal. 2001) (federal courts should attempt to accommodate state privilege in federal question cases unless doing so would impair assertion of a federal right); *United States v. King,* 73 F.R.D. 103, 105 (E.D.N.Y.1976) ("A strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy.").

same time "[p]rotect[ing] individual privacy rights and interests" and "[m]inimiz[ing] reluctance to use the court system." *Id.* § (a)(1), (6), (8).

Generally speaking, if the Idaho State Bar were obligated to disclose records relating to each allegation of attorney misconduct, aggrieved clients might be less willing to complain about attorney misconduct. Full disclosure of disciplinary proceeding records could also interfere with the bar's ability to issue private – as opposed to public – reprimands. *See, e..g,* Idaho Bar Comm'n Rule 506(d), (e), and (g) (relating to "Public Censure," "Public Reprimand," and "Private Reprimand," respectively).

On the other hand, the overriding policy in any § 1983 case is "one of disclosure of relevant information in the interest of promoting the search for truth in a federal question case." *Burke v. N.Y. City Police Dep.*, 115 F.R.D. 220, 225 (S.D.N.Y. 1987). In this case, the search for truth mainly involves answering this question: Why was Heather Timothy fired? Relevant to defendants' request for a protective order, the question is whether Dustin Smith's letter to the Idaho State Bar will reveal why Timothy was fired. The letter does not discuss Timothy's termination, so it is not directly helpful. Timothy, however, argues that the letter is still useful because she believes it will help her attack Smith's credibility. Specifically, she says Exhibit L will show that Smith lied to the Idaho State Bar about whether the County Commissioners had approved his receipt of payments for part-time secretarial services, which, in turn, would support her assertion that Smith lied about why he fired her. *See Response Br.*, Dkt. 55, at 5-6. ("Evidence that Smith lied to the State Bar about whether the County Commissioners had approved his receipt of payments for part-time secretarial services allegedly performed by his wife

is relevant to the issue of whether Smith lied about why he fired Timothy who had first reported his receipt of payments for part-time secretarial services to the Sheriff.").

The Court will deny the motion to prohibit any questioning regarding Exhibit L. Although defendants invoke the state-law confidentiality rule to protect Exhibit L from disclosure, they fail to appreciate that in this federal action, they must enunciate the specific harms that might flow from disclosure. Such an explanation is critical considering the general principles of truth-seeking in discovery, its broad application to any relevant, non-privileged material, and the general presumption against invocation of privilege in § 1983 cases. The Court will, however, limit its holding to the narrow and specific facts of this case. Further, just because the Court is allowing Timothy to ask questions about Exhibit L during discovery does not necessarily mean the Court will allow such questioning at trial, or that it will admit Exhibit L into evidence during trial. That is another issue for another day.

**2. Plaintiffs' Motion to Continue**

Despite having filed her own motion for summary judgment on the due process claim, Timothy now claims she needs to conduct additional discovery in order to defend defendants' cross-motion for summary judgment on the same claim. She seeks a continuance under Federal Rule of Civil Procedure 56(d).

Under Rule 56(d), the Court may defer consideration of defendants' cross-motion for partial summary judgment if Timothy shows that she "cannot present facts essential to justify . . . [her] opposition." A party requesting a continuance pursuant to Rule 56(d) must identify by affidavit "the specific facts that further discovery would reveal, and

explain why those facts would preclude summary judgment." *Tatum v. City of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006).

Timothy's counsel has submitted an affidavit explaining that they have been unable to depose Defendants Dustin Smith and Oneida County. *Muhonen Aff.*, Dkt. 51-1, ¶ 8. Plaintiffs have been pressing for these depositions for several months, but the parties disputed the proper parameters of these depositions. Timothy says that these depositions will allow her to establish that Timothy was "removed from her 'at-will' status with her employment with Oneida County and Smith in many instances." *Id.* ¶ 17.

The Court will grant the Rule 56(d) motion because it appears that Timothy has been diligent in seeking to depose these defendants. The Court reaches this decision with some reluctance. After all, Timothy decided to forge ahead with her motion for summary judgment, despite knowing full well that she had not been able to depose Smith or Oneida County. If she truly believed she needed to take these depositions before filing her motion, she should have waited. Nevertheless, the Court believes defense counsel should have offered to produce defendants for their depositions, notwithstanding the dispute regarding discovery into the part-time secretarial services payments. If these defendants had been offered up for deposition, the litigation could have moved forward more expeditiously and plaintiff could have taken the discovery she now says she needs to defend the cross-motion for summary judgment.

The Court will therefore grant the Rule 56(d) motion and deny defendants' cross-motion for summary judgment without prejudice. Defendant may renew this motion at the conclusion of the discovery.

**3. Plaintiffs' Motions for Summary Judgment**

Likewise, the Court will defer ruling on plaintiffs' motion for partial summary judgment until the conclusion of discovery. As noted above, defendants indicate that they may be filing a motion for summary judgment on these additional claims as well. Additionally, both sides indicate that they want the opportunity to (1) supplement briefing on the currently pending motions for summary judgment; and (2) file additional motions for summary judgment. *Stipulation*, Dkt. 58, ¶ 7.

Under these circumstances, the most logical, efficient way to proceed is to allow the discovery period to conclude, and then allow the parties to file fresh summary judgment motions, rather than to supplement existing motions and file additional motions. The Court will therefore deny all pending summary judgment motions without prejudice to the parties' refiling their motions at the conclusion of the discovery period. Further, if both parties intend to file motions, they are ordered to meet and confer so as to minimize briefing. The Court generally prefers to have four briefs on cross-motions for summary judgment, rather than six, as follow: (1) Motion for Summary Judgment, with a supporting brief; (2) Opposition and Cross-Motion, supported by a single brief; (3) Response to the Cross-Motion & Reply in Support of the Initial Motion; supported by a single brief; and (4) Reply in support of the cross-motion.

**4. Stipulated Motion to Extend Discovery Deadlines**

The parties have asked for an extension of the discovery deadlines. According to the parties, progress in this litigation came to a complete standstill because of the discovery dispute regarding Exhibit L and the part-time secretarial services payment and

Exhibit L. Additionally, the parties are now in the midst of yet another discovery dispute regarding an email defendants produced in February 2016. *Id.* at 2. The parties have entered into certain stipulations to resolve this dispute, including a stipulation that the discovery period remain open for 45 days following the last of depositions of a set of five depositions. The parties also stipulated that they shall have 30 days after the close of discovery to file additional motions for summary judgment.

The Court will extend the discovery cutoff in this case, as well as the dispositive motion deadline, for approximately 90 days – primarily because the parties' first discovery motion pended before this Court for a lengthy period. The parties should be able to schedule their depositions and resolve any additional disputes within the newly expanded time frames. The Court also reminds the parties that this Court is not in the practice of extending discovery deadlines simply because the parties are having discovery disputes. They should govern themselves accordingly.

## ORDER

**IT IS ORDERED that:**

1. Defendants' Motion for a Protective Order (Dkt. 56) is **GRANTED in part and DENIED in part** as explained above.

2. Plaintiffs' Motion for Partial Summary Judgment (Dkt. 41) is **DENIED WITHOUT PREJUDICE** to refiling the motion at the conclusion of discovery.

3. Plaintiff's Cross-Motion for Partial Summary Judgment (Dkt. 46) is **DENIED WITHOUT PREJUDICE** to refiling the motion at the conclusion of discovery.

4. Plaintiffs' Motion for Continuance of Defendants' Motion for Partial Summary Judgment Pursuant to Rule 56(d) (Dkt. 51) is **GRANTED.**

5. The parties' Stipulated Motion to Extend Discovery Deadlines is **GRANTED** to the following extent:

a. ***The discovery cutoff is*** extended from April 8, 2016 through and including ***July 8, 2016***.

b. ***The dispositive-motion deadline*** is extended from May 9, 2016 through including ***August 9, 2016***.

UNITED STATES COURTS DISTRICT OF IDAHO

DATED: May 18, 2016

B. Lynn Winmill
Chief Judge
United States District Court