UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| HEATHER S. TIMOTHY, an individual,<br><br>Plaintiff,<br><br>v.<br><br>ONEIDA COUNTY, a political subdivision of the State of Idaho; DUSTIN W. SMITH, individually and in his capacity as Prosecuting Attorney for Oneida County, Idaho; SHELLEE DANIELS, DALE F. TUBBS and MAX C. FIRTH, individually and in their capacities as Oneida County Commissioners,<br><br>Defendants. | Case No. 4:14-cv-00362-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

Before the Court are cross-motions for partial summary judgment. *See* Dkts. 60, 63. For the reasons explained below, the Court will grant defendants' motion and dismiss plaintiff's due process claim. The Court will deny plaintiff's motion for partial summary judgment on the remaining claims for: (1) retaliatory discharge in violation of the First Amendment; (2) retaliatory discharge in violation of Idaho's whistleblower statute; (3) negligent infliction of emotional distress; and (4) retaliatory discharge in violation of public policy.

MEMORANDUM DECISION AND ORDER - 1

# FACTS

Plaintiff Heather Timothy worked as a legal secretary for Oneida County from November 2005 through March 2014.  *See* SOF[1] ¶ 1.  During her employment, Oneida County promulgated various employee policy manuals.  *Id.* ¶ 3.  Timothy says that certain provisions in the policy manual, as well as written communications she received from Defendant Dustin Smith, will assist her in demonstrating that she was no longer an at-will employee of the County.

**1.      Provisions of Oneida County's Personnel Policy Manual**

Several provisions of the Oneida County Personnel Policy Manual are relevant here, beginning with this disclaimer, which is contained on the first substantive page:

> THIS PERSONNEL POLICY IS NOT A CONTRACT.  ANY AND ALL EMPLOYMENT WITH ONEIDA COUNTY IS CONSIDERED TO BE "AT WILL" UNLESS A SIGNED AND WRITTEN CONTRACT INDICATES OTHERWISE.  NO CONTRACT OF EMPLOYMENT WITH ONEIDA COUNTY WILL BE VALID UNLESS IT IS SIGNED IN ACCORDANCE WITH PROPER PROCEDURES BY A SPECIFICALLY AUTHORIZED REPRESENTATIVE OF THE ONEIDA COUNTY COMMISSIONERS AND UNLESS IT IS SIGNED BY AND CONTAINS THE NAME OF THE EMPLOYEE WHO WOULD BE BENEFITTED BY THE CONTRACT.

*Oneida County Personnel Policy,* Dkt. 46-8, at 3.

In the next sentence, the manual states that the policies may be changed at any

---

[1] Within this section, the acronym "SOF" refers to Statement of Facts defendants filed in support of their motion.  *See Defendants' Stmt. of Facts*, Dkt. 60-2.

time, without any prior notice:

> CHANGES TO THE POLICIES AND BENEFIT OFFERINGS
> OUTLINED IN THIS HANDBOOK ARE SUBJECT TO CHANGE
> AT ANY TIME, WITHOUT NOTICE.  CHANGES MAY BE MADE
> IN THE SOLE DISCRETION OF THE GOVERNING BOARD.

*Id.*

In a later section, the manual states that "new" employees of Oneida County are subject to a six-month introductory period, during which time "either the employee or Oneida County may end the employment relationship at will, with or without cause or advance notice." *Id.* at 15.  Another paragraph, entitled "Employment Status," states that County employees will not be discharged except for cause:

> Except as otherwise provided in this paragraph, employees of *Oneida County* will not be suspended without pay, demoted with an accompanying change in pay, or discharged from their positions *except for cause related to the performance of their job duties or other violations of this policy*.  Cause shall be determined by the employee's supervisor/elected official and shall be communicated in writing to the employee when the employee status is changed.

*Id.* at 22 (emphasis in original).  Under this same section heading, however, the manual states that "*Oneida County* retains full authority, without prior notice, to modify the general terms and conditions of employment."  *Id.*

A final set of provisions relevant to this lawsuit relates to discharge, demotion, and appeal hearings. First, within a section captioned "General Policies," the manual states that department heads and elected officials have the authority to "suspend, discharge, or take other disciplinary action against employees *for cause*."  *Id.* at 13.  A later section, captioned "Employee Discipline Procedures and Principles," contains more specific

provisions relevant to discharge, demotion, and appeal hearings. *Id.* at 33-34. This section begins with a general explanation of the "Purpose of [the] Discipline Policy":

> The purpose underlying the discipline policy of *Oneida County* is to establish a consistent procedure for maintaining suitable behavior and a productive working environment in the workplace. These procedures are discretionary in nature and minor variations of the processes set forth herein shall not affect the validity of any actions taken pursuant to this policy.

*Id.* at 33. The manual then adopts a framework for disciplinary action, including progressive disciplinary steps that may be taken, along with an appeal process. *Id.* at 33-35, ¶¶ C.2 – C.4. Regarding the appeal hearing, the manual states: "The personnel policy of *Oneida County* establishes the right to a hearing in the event of a discharge or demotion without attendant change in pay or suspension." *Id.* at 35, ¶ V.C.4. The manual then specifies the various procedures relevant to such a hearing. *Id.*

**2.      Timothy's Termination**

Timothy's employment was terminated in March 2014. The parties dispute the reasons for the termination. Timothy says she was fired in retaliation for reporting that her boss, Oneida County Prosecutor Dustin Smith, had misappropriated County funds. Smith claims that Timothy was fired for reasons related to her job performance.

**3.      Communications Related to Timothy's Termination**

In the weeks leading to Timothy's March 2014 termination, the parties exchanged a series of written communications. Smith began the process on February 4, 2014, by sending Timothy a Notice of Pending Personnel Action. SOF ¶ 8; Dkt. 63-12. The notice enumerated various forms of alleged misconduct, which allegedly resulted in

"violations of OCPPM [Oneida County's Personnel Policy Manual]." *Id.* at 1. The notice informed Timothy that Smith intended "to consider discipline consistent with Oneida County Personnel Policy." *Id.* at 3. Timothy was further informed that she could respond to the notice in writing "and/or" meet with Smith on February 10, 2014 to discuss the issues. *Id.* at 1, 3.

Timothy did not respond directly to Smith upon receiving this notice. Instead, on February 7, 2014, her lawyers sent a letter to the Oneida County Board of Commissioners, asking them to assist Timothy by "immediately withdrawing the [February 4, 2014] Notice . . . ." *See* Dkt. 63-13, at 2. The Commissioners did not respond to this letter, but shortly after this letter was sent to the Commissioners, Smith sent a letter to Timothy, suspending her without pay and postponing any February 10, 2014 meeting "until further notice." Dkt. 63-14, at 1.

A month later, on March 10, 2014, Smith sent another Notice of Pending Personnel Action to Timothy. *See* Dkt. 63-15. Timothy's lawyers responded in writing on March 13, 2014. Dkt. 63-16. Among other things, Timothy's lawyers accused Smith of retaliating against Timothy by sending a Notice of Pending Personnel Action shortly after Timothy had met with the Idaho State Police "regarding her knowledge of Mr. Smith allegedly misappropriating county/public funds." *Id.* at 2. Smith terminated Timothy a few days later, in a March 17, 2014 termination notice. *See* Dkt. 63-18.

In August 2014, Timothy filed this lawsuit. She alleges five claims, for (1) retaliatory discharge from her public position in violation of the First Amendment; (2)

denial of due process in violation of the Fourteenth Amendment; (3) retaliatory discharge from her public position in violation of Idaho's whistleblower statute; (4) negligent infliction of emotional distress; and (5) retaliatory discharge from Smith's private office in violation of public policy.  *See* Dkt. 25, *Second Am. Compl.*

## THE GOVERNING LEGAL STANDARD

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  There must be a genuine dispute as to any *material* fact – a fact "that may affect the outcome of the case." *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255.  Direct testimony of the non-movant must be believed, however implausible. Leslie v. Grupo ICA, 198 F.3d 1152, 1159 (9th Cir. 1999).  On the other hand, the Court is not required to adopt

unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The Court must be "guided by the substantive evidentiary standards that apply to the case." *Liberty Lobby*, 477 U.S. at 255. If a claim requires clear and convincing evidence, the question on summary judgment is whether a reasonable jury could conclude that clear and convincing evidence supports the claim. *Id.*

When cross-motions for summary judgment are filed, the Court must independently search the record for factual disputes. *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). The filing of cross-motions for summary judgment – where both parties essentially assert that there are no material factual disputes – does not vitiate the court's responsibility to determine whether disputes as to material fact are present. *Id.*

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Deveraux,* 263 F.3d at 1076. The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions,

answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex,* 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1029 (9th Cir. 2001) (quotation omitted). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana,* 336 F.3d 885, 889 (9th Cir. 2003).

## DISCUSSION

Defendants' motion for partial summary judgment is aimed at Timothy's due-process claim. They argue that Timothy was an at-will employee of Oneida County, and, as such, does not have the necessary property interest to support a procedural due process claim. Timothy brought a cross-motion on the same topic. She says the undisputed facts establish that she was *not* an at-will employee. Timothy also seeks "partial" summary judgment on all other claims alleged in her complaint. The Court will address each motion in turn, beginning with the cross-motions for summary judgment on the procedural due-process claim.

**1.    Timothy's Procedural Due Process Claim**

The Fourteenth Amendment to the United States Constitution protects individuals from the deprivation of liberty or property by the government without due process. A Section 1983 claim based upon procedural due process contains two elements: (1) a deprivation of liberty or property interest protected by the Constitution; and (2) a denial

of adequate procedural protections.  *See generally* 42 U.S.C. § 1983; *Brewster v. Bd. of Educ.*, 149 F.3d 971, 982 (9th Cir. 1998) (emphasis added).  Timothy contends that she has a constitutionally protected property interest in continued employment with Oneida County.

For continued employment to constitute a protected property interest, a person must have a reasonable expectation or a "legitimate claim of entitlement" to the benefit of continued employment.  *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).  The long-standing rule in Idaho is that employment is presumptively at-will. *Jenkins v. Boise Cascade Corp.*, 108 P.3d 380 (Idaho 2005).  Thus, "without a contractual agreement limiting a party's right to terminate the employment relationship, either party may terminate it at any time or for any reason without incurring liability." *Nix v. Elmore Cnty.*, 346 P.3d 1045, 1052 (Idaho 2015).  The Idaho Supreme Court explains that "[t]his rule reflects the judiciary's reluctance to bind employers and employees to an unsatisfactory and potentially costly situation, although we recognize that either party is likely to be damaged by an unforewarned termination of the employment relationship."  *Mitchell v. Zilog*, 874 P.2d 520, 523 (Idaho 1994) (as quoted in *Nix*, 346 P.3d at 1052).

Timothy concedes that the parties did not enter into an express, written contract limiting the County's right to terminate the relationship.  Nevertheless, "courts may imply a limit to the at-will employment presumption where the circumstances surrounding the employment relationship could cause a reasonable person to conclude

that the parties intended a limitation on discharge." *Nix,* 346 P.3d at 1052; *see also Jones v. Micron Tech., Inc.*, 923 P.2d 486 (Idaho 1996).

Timothy says the provisions of the Oneida County Personnel Policy Manual, together with the notices she received from Defendant Smith in the weeks leading to her termination, rebut the at-will presumption.

Whether an employee manual constitutes an element of an employment contract is generally a question of fact unless the handbook "specifically negates any intention on the part of the employer to have it become part of the employment contract." *Zilog*, 874 P.2d at 523-24. It is undisputed that Oneida County's policy manual expressly disclaims itself as a contract. As noted above, it states: "THIS PERSONNEL POLICY IS NOT A CONTRACT." Dkt. 46-8, at 3. It also states that "ANY AND ALL EMPLOYMENT WITH ONEIDA COUNTY IS CONSIDERED TO BE "AT WILL" UNLESS A SIGNED AND WRITTEN CONTRACT INDICATES OTHERWISE." *Id.*

Timothy contends that, notwithstanding this disclaimer, other provisions of the manual limited Oneida County's right to discharge her at will. Specifically, she points to the policy provisions stating that employees will not be terminated except for cause, as well as provisions indicating that county employees have a right to an appeal hearing during the disciplinary process. *See id.* at 22, 33-35.

The Ninth Circuit rejected a similar argument in *Lawson v. Umatilla County*, 139 F.3d 690 (9th Cir. 1998). In that case, the district court concluded that a county employee had a constitutionally protected interest in his job. *Id.* at 691. Thereafter, a jury found

that Lawson was not afforded appropriate due process protections and awarded damages. *Id.* The Ninth Circuit reversed, holding, as a matter of law, that Lawson did not have a protectable property interest because he was an at-will employee. *Id.* at 693.

On appeal, the key point of discussion was Umatilla County's policy manual. Although the manual stated that "[n]o permanent employee shall be disciplined except for violation of established rules and regulations" it also included the following disclaimer: "Under no circumstances shall these policies be construed to act as any type of employment contract with any employee of the County of Umatilla." *Id.* at 691. Additionally, the manual allowed the County to "deviate from the Policies upon written justification to avoid 'practical difficulties or unnessary [sic] hardships." *Id.*

The Ninth Circuit held that the disclaimer prevented Lawson from overcoming his at-will status, explaining: "The district court erred because it ignored the importance of the disclaimer . . . . Oregon courts have consistently held that a disclaimer in an employee handbook is sufficient to retain an employee's at-will status." *Id.* at 693 (citing *Mobley v. Manheim Servs. Corp.*, 889 P.2d 1342, 1345 (1995); *Gilbert v. Tektronix, Inc.*, 827 P.2d 919, 921 (1992).

Idaho courts recognize that "an employer can disclaim what might otherwise appear to be enforceable promises in handbooks or manuals or similar document." *Parker v. Boise Telco Fed. Credit Union,* 923 P.2d 493, 499 (Idaho Ct. App. 1996). Recently, in *Nix v. Elmore County*, 346 P.3d 1045, 1054 (Idaho 2015), the Idaho Supreme Court cited *Lawson* approvingly in concluding that a county employee retained

her at-will status notwithstanding arguably contrary provisions in the policy manual.

In *Nix*, an Elmore County employee argued that the county was obligated to provide her with a pre-termination hearing based on a policy manual provision stating that "[t]he personnel policy of Elmore County *establishes the right* for full-time regular and part-time employees to a hearing prior to any final decision on discharge, . . . .'" *Id.* at 1050 (emphasis added). But the manual also disclaimed itself as a contract and further indicated that "no contract of employment" with the county would be valid absent a signed agreement. *Id.*

*Nix* affirmed the trial court's grant of summary judgment in the county's favor, explaining:

> Because there was a disclaimer in the ECPP [the policy manual] explicitly stating that the ECPP was not a contract between employees and Elmore County, the provision providing for a pre-termination hearing is not binding on Elmore County. The disclaimer retained Nix's at-will status even though 'the policies also provide[d] . . . for an appeal process."

*Id.* at 1054 (citing *Lawson v. Umatilla Cnty.*, 139 F.3d 690, 693 (9th Cir. 1998)).

Timothy says *Nix* is distinguishable because Nix was placed on probationary status before she was fired and many communications sent to Nix before her termination expressly stated that she was an at-will employee. *See id.* Timothy points out that the notices she received did not expressly state that she was an at-will employee, and, moreover, implicitly referenced other provisions in the policy manual by notifying her that she had violated county policies and by offering her a chance to meet with Smith. Timothy says that if she was indeed an at-will employee as of March 2014, defendants

surely would have said so in the various notices she received.  *See Response Br.*, Dkt. 65, at 10-4.

But Timothy glosses over a key distinguishing fact:  Oneida County's employment manual expressly informs employees – on its first substantive page – that "*ANY AND ALL* EMPLOYMENT WITH ONEIDA COUNTY IS CONSIDERED TO BE 'AT WILL' UNLESS A SIGNED AND WRITTEN CONTRACT INDICATES OTHERWISE."  Dkt. 46-8, at 3 (emphasis added).  The policy manual in *Nix* did not contain such an explicit, global statement referring to the "at-will" nature of employment.  *Compare id. with Nix,* 346 P.3d at 1049.  Ultimately, that fact was irrelevant because the later notifications sent to Nix conveyed that she was an at-will employee.

Here, Oneida County's manual had already conveyed the message that *any and all* employment with the County was at-will, absent a signed, written contract indicating otherwise.  Dkt. 46-8 at 4.  There is no signed, written contract between the parties, and the fact that Oneida County later told Timothy why she was being considered for discipline and offered a pre-termination hearing – rather than simply terminating her without notice or explanation – does not support the conclusion that Timothy's at-will status had changed.  As defendants point out, "an employer may provide guidelines, which are necessary conditions for continued employment, and avoid having them read as a guarantee for a specific term of employment or as placing limits on the reasons for discharge."  *Nix,* 346 P.3d at 1052 (citing *Jenkins*, 108 P.3d at 387-88).

Under these undisputed facts, a reasonable person could not conclude that the

parties intended to alter Timothy's at-will status. Not only did the manual disclaim itself as a contract and expressly inform employees that "any and all" employment was at will (absent a contrary, signed agreement), it also stated that the County could change the policy terms any time, without notice, in its sole discretion. Under these circumstances, and despite a contrary provision stating that employees would not be terminated except for cause, Timothy has failed to rebut the presumption that she was an at-will employee of Oneida County. *See Nix,* 346 P.3d at 1052; *Lawson*, 139 F.3d at 693.

In addition to Ninth Circuit and Idaho authorities, the parties have engaged in a lengthy discussion of this district's decisions interpreting *Lawson*. The Court will briefly comment on two of these cases: (1) *Harms v. Jeffries,* No. 4:11-cv-111-EJL-CWD, 2013 WL 791452 (Mar. 4, 2013); and (2) *Brown v. Valley County*, No. 1:12-cv-57-CWD, 2013 WL 1453368 (Apr. 9, 2013).

In *Harms v. Jeffries*, a Power County Sheriff's deputy asserted that a policy manual's provision stating that no employee could be terminated without cause, combined with oral statements made by supervisors implying his employment was more than at-will, created a property interest in continued employment. 2013 WL 791452, at *12. The policy manual contained disclaimer language, stating that "under no circumstances is this handbook to be considered a contract . . . ." *Id.* at *5. Additionally, Harms signed a form acknowledging that he "understood and agreed" that the manual was not an employment contract or a guarantee of any particular terms of employment, and that the policy manual controlled over "verbal statements and representations." *Id.*

The Court held that the combination of: (1) the contractual disclaimer; (2) the policy manual's discretionary language; and (3) the waiver form "under which Plaintiff unequivocally renounced a right to anything other than at-will employment" precluded Harms from claiming a property interest in continued employment. *Id.* at *12 n.9.

In *Brown v. Valley County*, No. 1:12-cv-557-CWD, 2013 WL 1453368 (D. Idaho Apr. 9, 2103), a Valley County employee asserted he had a legitimate claim of entitlement to continued employment based on the county's policy manual. That manual shared some similarities to Defendant Oneida County's policy manual: It disclaimed itself as a contract; it had discretionary language indicating that the policy provisions could be changed at any time; and it contained a paragraph stating that employees would not be terminated without cause. Significantly, however, although the Valley County policy manual indicated that probationary employees were at-will employees, it did not clarify that other employees were also at will. *See id.* The *Brown* Court found this lack of an "at-will acknowledgment" significant, and then invoked what the parties refer to as the "three-legged stool" analysis:

> The [*Harms*] Court was clear that it was the three-part combination of the discretionary disciplinary policies, the contract disclaimer, *and* the at-will acknowledgment which precluded a finding that Harms had a protected property interest in continued employment with Power County, despite the one clause stating Harms could be discharged only for cause. *Here, the stool is missing a leg. Other than the ninety day introductory period, the Policy Manual did not unequivocally state that Brown was an at-will employee.*

*Id.* at *7 (emphasis added).

Defendants argue that this three-legged stool analysis is flawed and contrary to

governing Idaho authority.  Plaintiff, on the other hand, embraces the analysis and argues that because there is a missing "leg" here – the lack of an at-will acknowledgment – the Court should find that Timothy has rebutted the at-will presumption.

The Court will save defendants' global assertion that the *Brown* "three-legged-stool" analysis is flawed for another day.  Regardless of any alleged flaws, all three "legs" are present.  First, although Timothy did not sign a separate, at-will acknowledgment, the policy manual itself expressly states that "any and all" employment with Oneida County is at will.  Second, the policy manual disclaimed itself as a contract.  Third, the policy manual contained discretionary language, allowing the County to change the policy at any time, in its sole discretion.

In sum, under the undisputed facts before the Court, a reasonable person in Timothy's position could not conclude that the parties intended to alter Timothy's status as an at-will employee of Oneida County.  Accordingly, she does not have a property interest in continued employment with Oneida County and her due process claim fails. *See Dyack v. Commonwealth of N. Mariana Islands*, 317 F.3d 1030, 1033 (9th Cir. 2003); *Thompson v. City of Idaho Falls*, 887 P.2d 1094, 1100 (Idaho 1994).  The Court will therefore grant summary judgment in defendants' favor on this claim.

## 2.     Plaintiff's Motion for Partial Summary Judgment on All Other Claims

Timothy asks the Court to grant partial summary judgment in her favor on each of her retaliation-based claims.  The retaliation-based claims include Timothy's First Amendment claim, (Count I), her Idaho whistleblower statute claim, (Count III), her

claim for negligent infliction of emotional distress (Count IV), and her claim for termination in violation public policy (Count V).

The Court will deny this motion because each of the above claims hinges, at least in part, on the reasons Smith fired Timothy, and Timothy concedes that there are factual disputes on this issue. *See Reply,* Dkt. 67, at 2.

Given this concession, Timothy's request that the Court nevertheless find she has met "her initial burden establishing a prima facie case against the Defendants" is perplexing. To establish a *prima facie* case on her First Amendment and state whistleblower claims, Timothy must prove a causal connection between her speech and the adverse employment action. *See Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009) (First Amendment); *Black v. Idaho State Police*, 314 P.3d 625, 628 (Idaho 2013). Given the factual disputes on this issue, the Court cannot find, as a matter of law, that Timothy has met that burden. The Court will therefore deny plaintiff's motion for summary judgment on Counts 1, 3, 4 and 5.

### 3. Timothy's Motion for An Order Treating Certain Facts as Established

Finally, the Court will address Timothy's request that the Court treat the following fact as established: "Smith, when he terminated Timothy on March 17, 2014, was aware that Timothy was accusing him of retaliating against her because of her ongoing involvement in the criminal investigation of him." *Reply Br.*, Dkt. 67, at 11. To support this factual assertion, Timothy points to the March 17, 2014 termination letter she received. That letter, which is signed by Smith, states:

**MEMORANDUM DECISION AND ORDER - 17**

> You are hereby notified that, after your failure to appear and respond in person at today's hearing, and considering your verbal and written responses to me, *including the two (2) letters from your attorney dated February 7, 2014 and March 13, 2014*, and all other related information which you have been provided regarding this matter, I believe that you violated the provisions of the Oneida County Personnel Policy referred to in the Notices that were previously served on you.

*Mar. 17, 2014 Letter from Smith to Timothy*, Dkt. 63-18 (emphasis added). Timothy points out that in the referenced letters, Timothy's attorneys say that Smith is wrongfully retaliating against Timothy. *See Mar. 3, 2014 Letter from Muhonen to Castleton,* Dkt. 63-16, at 2.

Defendants do not dispute that Smith read and considered these letters in deciding to terminate Timothy. *Response,* Dkt. 66, at 11. Defendants do point out, however, that although "it remains undisputed that . . . Smith had reason to become aware of Timothy's involvement in the ISP investigation when he briefly interviewed her attorney's letter on February 10, Smith had no knowledge that Timothy was the person who actually initiated that investigation against Smith until after Timothy's termination." *Id.*

Under these circumstances, the Court will treat the following discrete fact as having been established: Smith read and considered Timothy's attorneys' letters in deciding to terminate Timothy's employment.

## ORDER

**IT IS ORDERED that:**

1. Defendants Oneida County and Dustin Smith's Motion for Partial Summary Judgment (Dkt. 60) is **GRANTED.**

  2. Plaintiffs' Motion for Partial Summary Judgment (Dkt. 63) is GRANTED IN PART and DENIED IN PART as follows:

   a. The motion is GRANTED to the extent the Court will treat the following fact as established:  Smith read and considered Timothy's attorneys' letters dated February 7, 2014 and March 13, 2014 (Dkts. 63-13 and 63-16) in deciding to terminate Timothy's employment.

   b. The motion is DENIED in all other respects.

DATED: March 21, 2017

B. Lynn Winmill
Chief Judge
United States District Court